Good morning, Your Honors. My name is Justin Ford on behalf of Petitioner Maria Santos-Mendez, and may it please the Court. Petitioner Maria Santos-Mendez's ultimate relief from this Court is a hearing, not the ability to stay with her citizen child, but rather a hearing before the Immigration Court to make her case for relief from removal under the Nicaraguan and Central American Readjustment Act. But the direct issue before this Court is the motion to reopen and the government's contention that there was inadequate evidence, or maybe they don't believe that she was really sick that day. Is there, I mean, are you arguing that we should take her affidavit and the information, medical information she provided us as sufficient and reopen, and order the reopening or that the Board could have an evidentiary hearing on that question if they wanted to? In other words, if they still think, well, maybe she really wasn't sick that day, despite the affidavit, are you arguing that they have to believe the affidavit or that they at least have to have a hearing on it? Our contention is that they do, in fact, have to take the alien's affidavit at face value unless it's inherently unbelievable, and that's supported by a long line of precedence of this Court. How about Silas Castellano? Beg your pardon? How about our case with Silas Castellano? Silas Castellano, we think, is distinguishable for two important reasons, and they relate to the four-part test that the Court has outlined because there's factors number two and three, which are the likelihood of success on the merits. That's a different test. Your point was they must hold an evidentiary hearing. Silas is a situation where the person says, I had a serious asthma attack and was unable to leave my house until July the 7th. And then he put in a medical affidavit from Kaiser that said, a few days later, he had an asthma attack. All right? Now, if we have to take, I had a serious asthma attack that made me unable to leave my house until July 7th at its face value, then that isn't what Silas says. It says, that's not good enough. The reason I'm talking about that is that sounds so close to what happened here. It sounds very close, but it's different in a couple of key respects. One is that the condition suffered by Ms. Santos-Mendez was much more serious than an asthma attack. I'm sorry. A very serious asthma attack can kill people and does. It's a very important, deadly disease to people. In fact, I know folks who died from it. All right? You just have one attack and you're gone. So, it is a very serious thing. And he says, I had a, not an asthma attack, but a very serious asthma attack that kept me from leaving my house. Now, she says I had a serious headache that kept me from leaving my house. That's what it amounts to, isn't it? What I'm asking you now is only to the point that you say, oh no, the court has to accept it at face value, but it sure doesn't look like we accepted that at face value. The standard is that the court must accept it unless the court finds the statement's inherently unbelievable. Tell me the standard. Tell me about Salus. Salus didn't say it's inherently unbelievable. It just said taking this thing, taking what they said at face value, they haven't justified it. That's not good enough. That is what Salus says, Your Honor. I would argue that the way that you separate this case from Salus is that the petitioner in Salus, Salus Castellano, was, he overstayed a visa and he was playing a game of chance with the immigration judge. And in this case, this, Maria Sanchez-Mendez. So, that decides it. So, we have to go into whether we think she's just playing games in terms of what she's doing with the immigration people or in order to decide whether we have to take this at face value? Is that what you're saying? I'm saying that it plays into the totality of circumstances that the court looks at when determining whether or not to The case law does take, does consider exceptional, does discern exceptional circumstances, reasons other than the reason given. That's correct. It has ranged from a twisted ankle to a misread date of a hearing notice to much more serious circumstances. And in Salus Castellano, the distinction there is that the immigrant overstayed his visitor visa and was ordered to report to the court for a deportation hearing. Ms. Santos-Mendez was going to present her facts showing that she was entitled to relief under NACARA. And that is a distinction. And I think, to Judge Fernandez's point, it's a sufficiency argument. So, the court in Salus Castellano found that the, they never actually, you're correct, they didn't ever actually find that the statement was inherently unbelievable. They simply found it insufficient. That's right. They found it insufficient for somebody to come in and say, I had a serious asthma attack and wasn't able to leave the house, but I didn't bother calling the immigration authorities. They said, you know, that's not enough. I think that plays into, I think there are two points that you raised that I'd like to touch on. The first is that the totality of the circumstances is important. And the court, this Court has considered the totality in many cases. What would calling the immigration authorities accomplish? Well, thank you for bringing that up. That was going to be my second point. I don't think it would accomplish anything. And, in fact, the notice that's in the record on pages 143 and 144 contains no phone number. It is in English. And Ms. Santos-Mendez speaks Spanish. And there's a deadline for filing a motion to reopen for exceptional circumstances. And she meant it. That's correct, Your Honor. And not only that, but the court is required by statute to enter an in absentia deportation order if the immigrant does not show up. So calling the court has no practical effect. Of course, we have said, and so has the BIA, that it is a factor. It is something that plays into it. Did the person try to get hold of the court? In fact, we have a case, it might have been the twisted ankle, I forget. We have a case that says something like, well, you know, didn't even try to find out how to call. Didn't even bother. Didn't try to call. Didn't look in a phone book. Didn't do anything. Just didn't bother. And that's what appears here. Just didn't bother to even try to notify the court. Right? That's correct. And, in fact, I believe in your, in Cedes-Castellano, they, this court held that it was not improper for the court to consider that. Which is far from a ringing endorsement. It's saying it's not improper to consider it. I mean, that sounds, it may not be ringing, but there it is. But to Judge Bersin's point, the practical effect of calling the court to inform of an absence is negligible. First of all, because there's no means given to, there's no means given to the immigrant on the notice of hearing to call the court. And, furthermore, if the immigrant were, in fact, to call the court. They would be told to file a motion to reopen, in all likelihood. Correct. And which. Do we know that to be a fact? Are we taking that as a fact? That if I called the court and said, you know, I'm absolutely sick in bed and I can't get there. Would you give me a continuance? They'd say, tough luck. File your motion to reopen. We know that as a fact. Is that what you're saying or are we just being cynical? I would never be so presumptuous as to assume what the immigration court would do, Your Honor. I've spoken to practitioners of immigration law who have told me. When did the motion, when did the absentia order issue? The same day? I don't know that off the top of my head, Your Honor. I would imagine. So if she called the next day, it had already issued. It had already issued. And even if she had called, it would require the immigration judge actually looking past the language of the statute to give a continuance, because if the hearing at the hearing date, the immigrant does not show up, they're required by statute to issue the order. Well, I think maybe sometimes or a couple hours later they might. But if the order is issued, that's a different matter. I do not know off the top of my head when the order was issued. I can look while the other counsel is presenting his arguments. So our ultimate argument is that the court should allow the hearing to proceed because we, for three separate reasons. The first I've touched on a little bit is that Santos Mendez satisfies the totality test for showing that exceptional circumstances exist. And the second is that the board erred in requiring a more contemporaneous showing of her condition that eventually required surgical intervention. And then the third is that the board erred in requiring without basis in logic or law that she phone the court an informant of her absence when it would have no practical effect on the ultimate decision. So I've touched a little bit on the factors. I'll go briefly through them. They're also in the briefing. First is that she suffered from hydrocephalus. It required a surgical intervention that required the draining of excess fluid from her head. She complained in her affidavit filed in her motion to reopen that she was suffering from debilitating headaches and nausea. This condition lasted for a very long time. And this Court has held, based on that totality of circumstances, that certain circumstances that were worse, for example, were potentially worse. For example, Judge Fernandez's asthma attack in Celes Castellano were insufficient. But in the totality of those circumstances, when we have a likelihood of relief, no motive to miss, and a potentially unconscionable result, the Court has found that a circumstance like this would merit exceptional circumstances to reopen the hearing. The likelihood of success I briefly touched on, we have she's, based upon the record, presumably entitled to NACAR relief. She certainly has more than a colorable claim to it, and the Court can have a hearing to determine any factual issues that it might have. That was the hearing that she missed due to her medical condition. She's been trying to get relief to stay in this country for 20 years. She's always presented her address and phone number. She had no motive to miss this hearing. Was there an issue regarding the NACAR relief, regarding what year she actually entered into the country? The record is more consistent than inconsistent, but there is one affidavit that is signed that indicates that she would have come in after the cutoff date. I don't know, based on the record, my speculation is that that's why the relief was not granted when she appeared before the administrative officer, and that the immigration judge, the hearing would be to determine those facts. The records of her declarations are a little inconsistent. I think she's had some bad legal advice. She is a native of Guatemala. There's one declaration filed that says she's a native of El Salvador. She doesn't speak English. She doesn't read English. I suspect there was some cut and paste, but obviously that's my speculation. Do you want to reserve time? I would like to reserve time. Okay, thank you very much. May it please the Court, Jonathan Robbins here on behalf of Eric Holder, the respondent. Good morning. The petitioner in this case, after having her claims for relief adjudicated by an asylum officer, was personally served with a notice to appear in immigration court, and obviously we're here because she failed to appear at that date. That was July 30, 2007. Now, three months later, she filed a motion to reopen with the immigration judge with evidence of this medical condition, hydrocephalus. The major problem with this evidence is that it didn't address the date that she had her hearing three months earlier. It's a pretty good inference, is it not, that the symptoms she reported on the day of the hearing were consistent with hydrocephalus. She was later diagnosed with hydrocephalus. She later had surgery for hydrocephalus. Is the notion that she didn't really have hydrocephalus, or that it wasn't really bad enough at that point, or what? Well, the notion is we don't know, and that's the problem. Well, if you don't know, then why don't you have a hearing? I mean, she filed an affidavit saying I was really sick. I had this, that, and the other thing. She certainly filed some supporting information from which a fair inference could be drawn. Presumably, she didn't go to the doctor at the earlier point because she hadn't yet figured out that this was really a continuing bad problem. But when she eventually did, it turned out to be a bad problem. Well, the problem with that is that it's the Petitioner's burden of proof in the motion to reopen to establish these things. Well, she did. Unless you don't believe her. Well, again, it's not a question of not believing. The immigration judge doesn't know, based on the evidence she presented with her motion, whether to believe her or not. And, again, first of all, there's this medical evidence which doesn't specifically relate to the date of her miscarriage. Well, it doesn't specifically, but it does inferentially. It does inferentially, but, again, the doctor's notice that she submitted with So maybe you should ask her for another declaration. I mean, it just seems to me to be the way the system seems to be run, there's no regulation saying what people are supposed to submit, right? She submits, I say that I was in really bad shape that day. It's supposed to be believed unless there's a reason not to believe it. Then she submits at least some supporting, unlike in some of the cases, some supporting, fairly strongly supporting information if one draws fair inferences from it. And then you say, well, that's not good enough. And, I mean, her life's at stake here. It would seem to me that either you have a hearing or you say give me some more information. You don't just say go home because we've now decided this isn't good enough, even though we didn't really tell you exactly what was good enough. Well, again, Your Honor, what you just said is drawing inferences. What's wrong with drawing inferences? We always draw inferences. Well, the standard for motion to reopen isn't to have the immigration judge assume certain things. It's to establish certain facts. An inference is not an assumption. It's a fair inference. If you have an illness a month and a half later documented, as to which this thing that happened earlier is, A, completely consistent, B, the medical information she submitted says that it's somewhat intermittent during the lead-up period, it all fits together in a pattern. If you went to a jury with it, for example, the jury could certainly conclude that she had hydrocephalus on that date, couldn't it? It could, but it could also make the inference that this is a later developed medical condition that is being used to excuse a prior absence. And, again, we don't know that. You're making that string of assumptions. And our standard of review is what? The standard of review is whether or not the immigration judge abused his discretion in denying the motion to reopen. But he's doing it on paper. That's what bothers me. In other words, if he'd seen live bodies, you know, and came to a conclusion, it would be one thing. But this is really more like a summary judgment sort of a problem. How much evidence is enough? It's really not. It's an abusive discretion standard, but it's all paper. And the question is, you know, what should he have gotten from this piece of paper? Well, again, Petitioner had an opportunity to corroborate her uncorroborated claim that she was sick on the day of her hearing. And, again, there's a two-month gap here. It wasn't uncorroborated. It may have been they may have not liked the corroboration, but it wasn't uncorroborated. It was to some degree corroborated. Well, remember, Your Honor, that there's a two-month gap here. Right. If she submitted in conjunction with the immigration judge. Well, it could be a coincidence that she happened to have the symptoms of this disease that she turned out to have and needed surgery for. But it probably isn't. Well, again, that's not we don't know that based on the motion to reopen. We don't know it, but. It probably isn't. It could be. It's just as legitimate an alternative that it could be a later developed medical condition that she's using to excuse her absence. And, again, there's also an issue of. But that's a credibility determination. See, that's what I'm trying to. I mean, you could either say, well, she never really wasn't sick on that earlier day. The issue is in a motion to reopen, whose burden is it to establish these things? No, the question is how and when is it decided what's enough evidence? She gave an affidavit. She said what was wrong with her, and she gave some cooperating evidence. And how is she supposed to know that that's not good enough? Well, again, it's not just the fact that the medical evidence didn't relate back to the actual time of her hearing. There's also this issue of a two-month gap. In conjunction with her motion to reopen, her attorney filed an affidavit saying that she was aware of the in absentia order on August 27th, at least on August 27th, when she sought out an attorney. And, again, there's a two-month gap between August 27th and October 29th. One can also infer that she was pretty sick in that period. Well, she was contacting an attorney. Right. And she was a representative at that point. Right. And they sat on their hands for two months after failing to appear in court. And, again, as Your Honor noted in Solis-Castellano, the failure to contact the immigration court when you have when you fail to appear in court is something that the What is the pertinence of that? Could you tell me what the pertinence of that is? I mean, I know what we said about it was it was not improper to consider it. That doesn't tell you how much weight it's entitled to. What is the relevance of it? Well, it's relevant in whether or not Petitioner was sitting on her hands while there was Suppose she had Suppose she had contacted She had a deadline by which she had to file the motion to reopen. She met the deadline. What if she had gone in and called the immigration court the day after the order issued? Would anything have happened? Well, that would bear relevance. If, as Your Honor suggested, they said it's too late, you have to file a motion to reopen, that would have relevance in the motion to reopen in determining whether or not this gap, this two-month gap, was either a later excused medical condition, because if she had contacted the court the day after to say that she was sick, that would tend to corroborate her currently uncorroborated affidavit. So that would have a basis in determining whether or not exceptional circumstances had been granted. And this Court has held that the diligence exercised in pursuing their motion to reopen is a factor that can be considered in determining whether or not it's correct. You're talking about this one case? Is there anywhere else? I'm sorry, which one? Salas-Castellano is that what you're talking about? No, this is in Vukmarovic where this Court held that diligence is one of the factors that can be looked at to determine whether exceptional circumstances have been established. And again, as Your Honor noted, Salas-Castellano is virtually the exact same facts of this case. You have medical documentation which doesn't really answer the fundamental question as to whether she was affected, and you have an uncorroborated affidavit. You don't have a person who had surgery for a really serious condition as to which this is consistent two months later. You don't have that. Well, that's exactly what Salas-Castellano did. No, it didn't. It was a asthma attack which, as Judge Fernandez says, can be very serious and can be fleeting. But the fundamental problem with the evidence is the same. It didn't inform the immigration judge. It didn't provide him with the information he needed to know whether or not the medical condition rose to the level of exceptional circumstances, which is precisely the same problem with this evidence. Yes, in that case it was with respect to the seriousness of the condition, and in this case it's with respect to whether or not the condition actually affected her on the time of her hearing. But the fundamental problem is the same. But in Salas-Castellano, in that case, didn't they assume that the statement regarding the condition was true? And in this case, you're operating under the assumption that her statement regarding what happened is false. That's not what I'm saying. I'm not saying it's false. But if it was true, would she be entitled to relief? You mean, would she be? Her declaration, yes. You assume her declaration was, in fact, correct. Isn't she entitled to relief? Would it rise to the level of exceptional circumstances? Absolutely. It's possible. But, again, that's an assumption that there's no requirement that in circumstances in absentia order that an affidavit must be taken as true. No, that's not true. Excuse me. That is not true. Our cases say definitively, including Salas-Castellano, that it's to be taken as true unless it's improbable. Respectfully, Your Honor, that specific holding has to be reconciled with the Court's decision in Salas-Castellano. And if you were just simply an affidavit. Salas-Castellano says that it does hold that the Board must accept the facts in an alien's affidavit as true unless inherently unbelievable. Yes, Your Honor. But, again, the problem with that is this. Any in absentia removal order here, anybody could just file an affidavit saying, I was sick. And that would be sufficient to reopen in absentia, to vacate an in absentia removal order. That's not what the Court, I mean, it has to be reconciled with the Court's decisions in these cases where there is an affidavit provided. Actually, Salas-Castellano says he argues all that's true. And then we say it doesn't hold. They must accept the facts as true unless inherently unbelievable. That's the next paragraph. However, blah, blah, blah. But, again, the Court went on to reject that affidavit as sufficient. Yes. Because the evidence didn't match up. But not because it was no, I'm sorry. It rejected it as insufficient to demonstrate the seriousness, but not as not credible. In other words, this is what Judge Fernandez is saying, Julie. You seem to be saying that they didn't need to believe that she actually had the symptoms on the day that she said she had them. And our case law says otherwise. Right? Now, as to whether those symptoms were serious enough, that's a different question. But they could not disbelieve that she had her headaches and her nausea and her disease, whatever she said she had. Well, his statement said that it was serious. So if he presented evidence, so it's the exact same thing as in this case. Well, serious is, you know. But, I mean, that's the claim you made. Okay. But that's not my point. My point is that you're saying, you're now switching gears. Because what you were saying earlier was they didn't need to believe. For example, in stating why you thought it was relevant that she didn't make the phone call because maybe this never happened. The fact that it never happened is not an acceptable possibility here. All right? Because our case law says it is. Because she signed an affidavit saying it did happen. I'm sorry if I wasn't clear. What I was trying to equate it to was the exact same situation in Solis-Castellano, where they have the affidavit and they have the evidence, which doesn't specifically inform the immigration judge as to what exactly went on. I mean, as your Honor noted, this is almost exactly the same with the exception of this is with relation to. So let me go back to what I raised at the outset. What I don't understand about this is in ordinary motion to reopen terms, she has certainly presented, quote, a prima facie case. Why don't you have a hearing if you don't think that it's serious? Hasn't she demonstrated at least enough that somebody who, a fact finder could have decided in her favor? Well, again, Your Honor, that ignores this aspect of diligence here. There's a huge gap between the time she filed her motion to reopen and the time she claimed to be sick. But that could only go, as you demonstrated earlier, to the only thing you said that was coherent about what the relevance of that could be, would go to a credibility question. Did it really happen? There's also the issue of there's nothing in her motion to reopen that claimed. She never claims to be incapacitated on any other day except July 30th. Of course she should. She doesn't have to prove to herself. I mean, then have a hearing and ask her. But there was no reason she should have done that. The immigration judge denied relief, noting that, look, we acknowledge that she has this affidavit in which she claims this, and we have this medical records which don't specifically speak to that date. And there's a two-month gap here which can't be ignored. And where in her motion to reopen does it explain this gap? If she knew about her in absentia hearing on August 27th, there's still a two-month gap in filing her motion to reopen. Excuse me. It was a timely motion to reopen. What obligation did she have to file it earlier? The timeliness of a motion to reopen in the regulation, the 180-day requirement, doesn't relate to diligence. That's a cap placed in the regulation. Okay. Now tell me again what the relevance of the diligence is to the question of whether she had a serious medical condition on the date that she said she did. Well, with respect to whether or not she had that, that's a separate issue. There's whether, A, whether she had the condition on the date of her hearing, and, B, the issue of diligence. We have to at least assume that she had what she said she had because our cases say that because she signed an affidavit saying it. No, we have to assume that no, no, we don't have to assume that because her affidavit is not corroborated. It's the exact same situation as in Celis Castellano. And that's what Celis Castellano said. We must accept the facts in an alien's affidavit as true unless inherently unbelievable. However, that doesn't, the facts assert whether he had asthma and had an attack, and that doesn't establish whether it's serious, but it establishes that he has asthma and he had an attack. Similarly here, the affidavit establishes that she had the symptoms she said she had on the day she said she had them. Right, and so she's making the same claim that she had these circumstances which rise to the level of exceptional circumstances because it affected her on the day of her claim. But again... All right, so tell me again what the relevance of the diligence is then. The diligence is also a factor under this Court's case law, under Vukmarovic v. Holder, as to whether or not, so even if we were to assume that it is true, that she did suffer from this medical condition on the day of her hearing, there's the issue of pursuing or contacting the immigration court or following up in a timely manner rather than... Ted, which case you're relying on for that? I'm sorry, what? What is the case you're relying on? Vukmarovic v. Holder. Vukmarovic. And that Court specifically held that diligence is one of the factors that the Court may consider as to whether or not something rises to the level of exceptional circumstances. It's cited in our brief as well. And again, there's the... Your time's run out. Oh, I'm sorry, Your Honor. Well, we respectfully request that the Court uphold the decision of the Board of Immigration Appeals. Thank you very much for your time, Your Honor. We have some time left. Briefly, Your Honor, Vukmarovic v. Holder, which the government was relying on, 640 Fed 3rd 977. That involved an immigrant who failed to update his mailing address with both his attorney and with the court. And that was the diligence described by the panel in... It was actually reheard. But the diligence that they were describing was not a diligence post hoc of making sure you get your appeal in well within 180 days. And this actually goes to something else I'd like to point out. The government has completely ignored all of the other factors that have gone into the totality test regarding Ms. Santos-Mendez's case. It would not be open season to say that the affidavit, all anyone has to do is submit an affidavit saying they're sick. And, in fact, the statute says that they have to submit evidence, affidavits. And the cases of this court have been clear that the court must take that affidavit as true unless inherently unbelievable. And to Judge Hernandez's point, the government is actually arguing that her statement is inherently unbelievable because of this time gap. And we would argue that all of these, all of the actions that she has presented to the court are consistent with her having the medical condition, that the medical condition prevented her from going to the hearing, and that all of the factors in the totality circumstances show that she has presented exceptional circumstances. And we would argue that we would urge this court to reverse the board's decision and remand for a hearing. Thank you. Thank you very much. Thank you. The case of Santos-Mendez v. Holder is submitted.
judges: Hernandez, Fernandez, Berzon